CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorneys

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5044
    George.Hageman@usdoj.gov
    Jared.Buszin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE MEXICANO a/k/a "Armani," <br><br> Defendant. | **CASE NO. 5:24-CR-00226-BLF-006** <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:         Hon. Beth L. Freeman <br> Hearing Date:  October 21, 2025 <br> Hearing Time:  9:00 a.m. |

## I. INTRODUCTION

Jose Mexicano is a mid-level member of the Salinas Acosta Plaza (SAP) Norteños. He has been involved in drug trafficking and firearms trafficking on behalf of the gang. He has committed several acts of violence including, most notably, two incidents that happened while he was on federal pretrial release in this case. However, he is not alleged to have been personally involved in any murders or attempted murders. Based on the need for the sentence to consider the history and characteristics of the defendant, promote respect for the law, and protect the public from further crimes, the government submits that 60 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II. PROCEDURAL HISTORY

On April 18, 2024, the defendant and ten other members of SAP were indicted by a federal grand jury on one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Dkt. 1. On May 2, 2024, he was arrested and made his initial appearance in federal court. On May 27, 2025, the defendant pleaded guilty to the sole count. Dkt. 217. Sentencing is set for October 21, 2025.

## III. OFFENSE CONDUCT

a. *The Enterprise: Salinas Acosta Plaza (SAP)*

SAP is a criminal street gang that operates in Salinas, CA, within the larger collection of Norteño criminal street gangs that align with the Nuestra Familia (NF) prison gang and funnel taxes and proceeds from their crimes on the street to Nuestra Familia gang members in prison. Norteño gang members associate with the color red, and the number "14" (signifying "N" as the 14th letter of the alphabet), including any variations of the number such as "4" and "XIV." PSR ¶ 9.

SAP originated in the 1990s in the Acosta Plaza apartment complex in Salinas at and around the 900 block of Acosta Plaza. The gang claims that apartment complex as its territory. SAP commonly uses the letters and numbers "SAP," "A," "P," "900" and "914," as well as the color red, to identify itself. SAP members also commonly wear clothing of the Atlanta Braves and Philadelphia Phillies baseball teams to represent the gang, given that the symbols of these teams prominently feature the letters "A" and "P". *Id.* ¶ 10. These symbols are commonly, though not universally, displayed by SAP members in tattoos,

graffiti, drawings, hand signs, on clothing, and in photos, rap videos, and social media posts as a way of displaying their affiliation, loyalty, and commitment to the gang. *Id.* ¶ 11.

SAP's primary rivals are Sureño criminal street gang members. Sureños recognize the primacy of the Mexican Mafia prison gang, doing the bidding and following orders of Mexican Mafia members. For symbols, they claim the color blue and the number 13 (M is the 13th letter of the alphabet). The rivalry between Norteño and Sureño gang members in Salinas has resulted in numerous acts of violence, including murders, attempted murders, shootings, and assaults. Additionally, SAP members very often target victims who they perceive to be Sureño gang members but who are not actually gang-affiliated, which has led to several murders and attempted murders of non-gang-affiliated victims. *Id.* ¶ 12.

In order to gain entry into the gang, aspiring SAP members may be encouraged or required to put in "work," which is understood to mean criminal conduct such as shootings, robberies, and drug sales. SAP members gain admission, earn status and respect, and rise in rank by committing criminal acts that benefit the gang and/or by spending time in jail or prison for the same. *Id.* ¶ 13. SAP members engage in acts of violence, including acts involving murder and assault, against their rivals and, at times, fellow Norteños considered to have violated the gang's rules. SAP members also traffic in controlled substances and firearms. Violence is often the quickest way to gain admission and/or status for the individual gang member. Members are also expected to pay dues to the gang, with greater dues required of those members who traffic in controlled substances. The dues are used, in part, to acquire firearms for distribution, possession, and use by SAP members. *Id.*

SAP members meet and work together to carry out illegal activities for the benefit of SAP and its membership, and also to benefit, more generally, the Norteños and the NF. SAP members fight with other street gangs for control of territory from which they conduct drug trafficking and other crimes, and recruit and intimidate non-gang members. SAP members engage in acts of violence and intimidation to control illegal activities, to claim or maintain established territory, to retaliate against a rival gang or suspected rival gang member, to earn notoriety and respect, to dissuade potential victims and witnesses from reporting crime or cooperating with law enforcement, to discipline fellow gang members, and to send a message to others that they are strong, powerful, and not to be provoked. *Id.* ¶ 14.

UNITED STATES' SENTENCING MEMORANDUM   2
5:24-CR-00226-BLF-006

b. *Defendant's Role in SAP*

From at least May 2014 and continuing through at least April 2024, the defendant has been an SAP Norteño gang member. *See id.* ¶ 16. During this time, he agreed to conduct and to participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity. As an Enterprise member, he knew and agreed that Enterprise members would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise, including acts involving murder, robbery, narcotics trafficking, and witness intimidation – all in service of the Enterprise and its interests. *See id.* He has "SAP" tattooed on his chest, "900" on his right arm, "A" on his right hand," and "P" on his left hand. He wears these tattoos to demonstrate his membership and status within the gang. *See id.*

From at least May 2021 through at least October 2023, the defendant trafficked controlled substances such as fentanyl, cocaine, and mushrooms (containing psilocyn or psilocybin, a Schedule I controlled substance). He stored these controlled substances at his residence, at the homes of fellow SAP members, and on his person. For example, on May 13, 2021, he knowingly possessed in his pocket $426 in cash (various denominations) and 85 blue fentanyl-laced "M30" pills, which he intended to sell. *See id.* ¶ 17. He would sell the drugs himself, or direct other SAP gang members to deliver them to customers at prices and quantities which he himself arranged—most often through phone calls, text messages, and social media applications on his smartphone. He would sell or direct others to sell drugs in order to profit personally as well as to pay gang dues to SAP leaders, knowing that the money would be used to bail fellow gang members out of jail and/or pay dues to the Monterey County Regiment and the Nuestra Familia. *See id.* He would often pay higher monthly gang dues than others because of the fact that he was earning extra money through the sale of drugs. He would also sometimes take on a leadership role by collecting gang dues from other gang members; he did so on at least two occasions in November 2022 and April 2023.

From at least September 2022 through at least July 2023, he also trafficked firearms despite not having a firearms dealing license and despite being a prohibited person due to his felony convictions for concealed carry of a stolen Smith & Wesson .357 Magnum revolver in 2018 and felon in possession of a Stern Ruger Super Blackhawk .357 revolver in 2020. *See id.* ¶ 18. He conspired with other SAP gang

UNITED STATES' SENTENCING MEMORANDUM   3
5:24-CR-00226-BLF-006

members to purchase multiple firearms of varying calibers. He knew that these firearms could be used by other SAP gang members to commit violent crimes.

On February 24, 2024, another person and the defendant assaulted two male victims during a street fight. *See id.* ¶ 19. The defendant personally kicked one victim in the head while he was on the ground and stomped on the head of another victim's limp body. Public acts of violence can boost one's reputation and credibility within and outside of SAP.

On November 3, 2024—while on pretrial release—other SAP gang members and the defendant assaulted a juvenile male associated with Salinas East Market, a Norteño gang that has been in an intra-Norteño dispute with SAP. The defendant saw the male and punched him several times. *See id.* ¶ 20. He later learned that the male was stabbed three times in the back. The male suffered serious bodily injury but survived. Afterwards, the defendant was put "on freeze" (i.e. a sort of house arrest) by the Monterey County Norteño Regiment for 60 days. He discussed his "freeze" status with the acting "channel" (i.e. leader) of SAP via the social media application Instagram using his personal smartphone.

In January 2025—while on pretrial release—the defendant assaulted an SAP associate who needed "DP" (i.e. discipline) because he violated the gang's internal rules. *See id.* ¶ 21. The defendant punched the victim multiple times, including after he fell to the ground. As a more senior SAP member, he saw it as his role to ensure that those who "throw up the hood" (i.e. claim to represent the gang) are doing so according to the gang's rules. Afterwards, he discussed the assault with another person via the social media application Instagram using his personal smartphone.

### IV.   SENTENCING GUIDELINES CALCULATION

The government agrees with a base offense level of 33, minus 3 for acceptance of responsibility, for a total offense level of 30. *See id.* ¶ 60. The government also agrees that the defendant is in criminal history category IV. *See id.* ¶ 67. Together, his guidelines range is 135-168 months. There is no applicable mandatory minimum.

### V.   APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d

UNITED STATES' SENTENCING MEMORANDUM   4
5:24-CR-00226-BLF-006

984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need for the sentence to afford adequate deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

**VI.  RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS**

Upon consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a)—and in particular the need for the sentence to consider the history and characteristics of the defendant, promote respect for the law, and protect the public from further crimes —the government respectfully recommends a sentence of 60 months' imprisonment.

   *a. Wide Range of Criminal Activity*

The defendant has been a member of SAP for at least a decade. In that time, he has been involved in a number of the gang's lines of operation. He admits to trafficking controlled substances like fentanyl, cocaine, and hallucinogenic mushrooms. He admits to trafficking firearms despite being a prohibited person due to prior felony convictions for weapons possession. He admits to multiple recent acts of violence: two in 2024 and one in 2025. He admits to taking on "mentorship" or supervisory roles briefly, whether through the collection of gang dues or directing other SAP members to sell drugs on his behalf. Far from being just a role player or a newcomer to the gang, the defendant has been at the core of the organization for years.

### b. Continued Criminal Activity on Pretrial Release

The defendant was released on conditions soon after his arrest in May 2024. But instead of taking advantage of that opportunity and starting the process of turning his life around, he seems to have gone right back to what he was doing before. In November 2024, he assaulted a juvenile member of a rival Norteño gang. The victim was also stabbed three times in the back in the same fight but survived. In January 2025, the defendant assaulted an SAP associate who had violated the gang's rules and merited "discipline." The defendant punched this victim several times including while he was on the ground. While these incidents may not be as severe as the shootings listed elsewhere in the indictment, the fact that he did all this while under the microscope of federal pretrial release shows that he had no intent—at least at that time—of respecting the law or changing his ways.

### c. Early Acceptance of Responsibility

On the other hand, the defendant does deserve credit for accepting responsibility early in this case. He pled guilty on the same day as the co-defendant who was sentenced first in this case (Vasquez) and only had his sentencing delayed due to scheduling issues. After he was caught on the above-mentioned violations of the terms of his pretrial release, he agreed to be remanded into custody so that he could begin serving his federal sentence. The resulting term of 60 months would keep him in prison longer than he has spent in custody on his previous state custodial terms combined. Hopefully that escalation of consequences finally puts him on a better path.

## VII. VICTIM IMPACT AND RESTITUTION

As of this filing, the government has not received any Victim Impact Statements for the defendant's sentencing. The government is also not aware of any victims who wish to speak at sentencing, or any restitution requests, at this time. If any of the above are received prior to or at sentencing, the government will inform the Court.

## VIII. CONCLUSION

Jose Mexicano is a mid-level member of SAP who has been involved in drug trafficking, firearms trafficking, the collection of gang dues, and most brazenly several recent acts of violence including two committed while on supervised release. His conduct merits a significant term in federal custody.

UNITED STATES' SENTENCING MEMORANDUM   6
5:24-CR-00226-BLF-006

However, despite his wide range of criminal activity, he is less culpable than other members of the gang who have served in upper leadership roles and/or committed murders or attempted murders. To his credit, he also accepted responsibility early and agreed to be remanded to custody after getting caught for his violations of pretrial release. Based on the need for the sentence to consider the history and characteristics of the defendant, promote respect for the law, and protect the public from further crimes, the government submits that 60 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

DATED: October 7, 2025					Respectfully submitted,

							CRAIG H. MISSAKIAN
							United States Attorney

							*/s/*_____
							GEORGE O. HAGEMAN
							JARED S. BUSZIN
							Assistant United States Attorneys

UNITED STATES' SENTENCING MEMORANDUM   7
5:24-CR-00226-BLF-006